See also D.C., 526 F.Supp. 778, and D.C., 503 F.Supp. 383.

**RESIDENT ADVISORY BOARD et al.**

v.

**Frank L. RIZZO et al.**

**Civ.A.No. 71–1575.**

United States District Court,
E.D. Pennsylvania.

May 20, 1983.

Jonathan M. Stein, Harold R. Berk, Community Legal Services, Philadelphia, Pa., for Resident Advisory Bd.

Mark A. Aronchick, City Solicitor, City of Philadelphia, Law Dept., Philadelphia, Pa., for City of Philadelphia.

Harold Cramer, Arthur W. Lefco, Philadelphia, Pa., for Philadelphia Housing Authority.

Peter F. Vaira, U.S. Atty., James Sheehan, Asst. U.S. Atty., Philadelphia, Pa., for Housing and Urban Development.

Peter A. Galante, Philadelphia, Pa., for Redevelopment Authority.

Joseph M. Gindhart, Philadelphia, Pa., for Whitman Council, formerly Whitman Area Improvement Council.

Richard S. Meyer, Stephen J. Harmelin, Thomas J. Bender, Jr., Philadelphia, Pa., for Jolly Const. Co. and A & R Development, Inc.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

Before the Court are four motions of plaintiff-intervenor A & R Development Corp./The Waterford Group, Inc. (A & R) to compel discovery against defendant Department of Housing and Urban Development (HUD). A & R seeks the production of twenty-nine documents withheld by HUD. HUD has asserted an "administrative deliberation" privilege with respect to five of the documents, the work product privilege with respect to nineteen, and both privileges with respect to the remaining five. HUD has responded to A & R's motion to compel production of the documents, has listed the documents for which it asserts the privilege, and has included summaries of some of these documents. A & R has also moved to compel the deposition testimony of three individuals: John Knapp, general counsel of HUD; Alfred Marcks, deputy area office manager of

HUD; and Thomas Maloney, former regional administrator of HUD. During their depositions, these three individuals were instructed by HUD's counsel not to testify concerning several of the documents to which HUD has asserted a privilege, and concerning several meetings and decisions with respect to the Whitman development. These instructions were also based on the administrative deliberation and work-product privileges.

HUD has not responded to the motions to compel deposition testimony, nor has HUD responded to a motion that these motions be granted as uncontested. Nevertheless, since the same privileges have been asserted with respect to the deposition testimony as with respect to the documents, and since the deposition testimony sought to be compelled is in large part concerned with these documents, the Court will treat all of A & R's motions as contested, and not grant the deposition motions as uncontested pursuant to Local Rule 20(c) of this Court.

■ The "administrative deliberation" privilege asserted by HUD, which can also be termed a predecisional or deliberative process privilege, *Coastal States Gas Corp. v. Department of Energy*, 617 F.2d 854, 866 (D.C.Cir.1980), rests on the policy of protecting "advisory opinions, recommendations, and deliberations comprising part of a process by which governmental decisions and policies are formulated." The purpose of the privilege is to prevent injury to the quality of agency decisions which could result from premature or indiscriminate disclosure of such deliberations. *National Labor Relations Board v. Sears, Roebuck & Co.*, 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975); *Conoco Inc. v. U.S. Department of Justice*, 687 F.2d 724, 727 (3d Cir.1982). Only predecisional communications are privileged; communications "made after the decision and designed to explain it are not." 421 U.S. at 151, 95 S.Ct. at 1517. The work-product privilege is applicable to government attorneys in litigation. 421 U.S. at 154, 95 S.Ct. at 1518. This privilege protects primarily the attor-

ney's "mental impressions, conclusions, opinions or legal theories," and is intended to aid the adversary process by allowing attorneys to work with a certain degree of privacy, assembling information, sifting facts, and preparing legal theories and strategy without undue and needless interference by opposing parties and their counsel. The privilege also comports with basic ideas of fairness by preventing a party, without a proper showing, from obtaining the benefits of his adversary's trial preparation efforts. *Hickman v. Taylor,* 329 U.S. 495, 510–11, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947).

■ Neither the predecisional deliberative process privilege nor the work-product privilege is absolute, and each can be overcome if the party seeking discovery shows sufficient need for the otherwise privileged material. *Hickman,* 329 U.S. at 511, 67 S.Ct. at 393; *Smith v. Federal Trade Commission,* 403 F.Supp. 1000, 1015 (D.Del. 1975); *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26, 43 (N.D.Tex.1981). Since these privileges obstruct the search for truth, and since their benefits are "at best indirect and speculative" they must be strictly confined "within the narrowest possible limits consistent with the logic of [their] principles." *In re Grand Jury Proceedings,* 599 F.2d 1224, 1228, 1235 (3d Cir. 1979); *See Coastal States Gas Corp. v. DOE,* 617 F.2d at 868; *Exxon Corp. v. DOE,* 91 F.R.D. at 43. The Court must, therefore, assure that these privileges are not applied "in a manner which will impede the search for truth in circumstances where the policies underlying these privileges will not be served." *In re Grand Jury Proceedings,* 557 F.Supp. 1053, 1055 (E.D.Pa.1983).

■ The Court agrees with A & R's contention that HUD has not properly asserted the predecisional deliberative process privilege. Indeed, although HUD has argued the applicability of this privilege to the discovery sought by A & R, HUD has not responded in any way to A & R's contention that HUD's manner of invoking the privilege is, in this case, defective, and has made no attempt to cure these defects. To assert

the privilege, three requirements must be satisfied. First, "there must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds,* 345 U.S. 1, 7–8, 73 S.Ct. 528, 532, 97 L.Ed. 727 (1953). This requirement has apparently been imposed in every case involving this privilege, and in no case has assertion by the litigation attorney for the government been held adequate. *See United States v. O'Neill,* 619 F.2d 222, 225–26 (3d Cir.1980); *Mobil Oil Corp. v. Department of Energy,* 520 F.Supp. 414, 416 (D.N.Y.1981); *United States v. American Telephone & Telegraph,* 86 F.R.D. 603, 605–08 (D.D.C.1979). As stated in *Pierson v. United States,* 428 F.Supp. 384, 395 (D.Del.1977):

> [T]he judgment of attorneys engaged in litigation is very likely to be affected by their interest in the outcome of the case.... It is of the greatest importance that the privilege be invoked only when policies it seeks to encourage are seriously threatened. Requiring the agency head to review the documents sought and to claim the privilege where appropriate is the most effective method available to assure consistency and prudence.

There is no indication in the present case that the predecisional deliberative process privilege has been asserted by anyone other than the attorneys representing HUD in this phase of the litigation. At the depositions of the various HUD officials, the privilege appears to have been asserted at the instigation of HUD's attorneys, and not by the officials themselves. Certainly, there is no indication in the record that these officials personally reviewed the evidentiary material in question and made a determination that the *public* interest, as opposed to the government's interest in this litigation, would best be served by nondisclosure. This fact is of special importance in light of the deposition testimony of two former HUD officials, general counsel Jane McGrew and her assistant, Thomas Collier, in which each explicitly rejected HUD's as-

sertion of the deliberative process privilege and work-product privilege with respect to several documents and decisions concerning which these two officials had personal knowledge.

A second requirement for the invocation of the predecisional deliberative process privilege, one closely related in purpose to the first, is a demonstration, usually by affidavit of the responsible agency official, of precise and certain reasons for preserving the confidentiality of the governmental communication. *United States v. O'Neill*, 619 F.2d at 226; *Smith v. Federal Trade Commission*, 403 F.Supp. at 1016. The agency must articulate "precise reasons why the public interest would be affected adversely by disclosure." *Exxon v. DOE*, 91 F.R.D. at 44. No such demonstration has been made in the present case, and, indeed, no justification for withholding disclosure has been advanced at all other than the bare assertion that the privilege applies.

The third requirement for invoking the predecisional deliberative process privilege is a specific designation and description of the documents claimed to be privileged, of sufficient detail to allow a reasoned determination as to the legitimacy of the claimed privilege. *Conoco*, 687 F.2d at 728; *United States v. O'Neill*, 619 F.2d at 226. Several of the documents identified by HUD as privileged, for example the March 18, 1981 memo from Kenison to Hipps ( # 2), though summarized at some length, do not sufficiently describe the material sought to be privileged or the way in which this material was used in the decision-making process. Others include only the briefest and most conclusory of descriptions, for example, "response to request for analysis of legal and policy options available to HUD" or "analysis of program alternatives." ( # # 10704, 10801). Clearly, these latter descriptions do not adequately support HUD's assertion of privilege.

■ Specificity of description is necessary to enable the Court to comply with its duty of insuring that the privilege is invoked as narrowly as possible consistent with its objectives. It is well-established that the privilege protects only *predecisional* information which is actually part of a deliberative process. The material to be protected must reflect the "give and take" of the consultative process, the personal opinions of the agency members in the course of policy formulation rather than the policy of the agency itself. *Coastal States Gas Corp. v. DOE*, 617 F.2d at 866. The material sought to be protected by HUD concerns primarily legal and administrative tasks incident to implementation of Orders of this Court and policies already formulated by HUD; these appear ministerial in character and not protected by the deliberative process privilege. Moreover, use of material in the decision-making process does not in itself establish that the material warrants protection. Unevaluated factual reports, summaries of past administrative determinations, or investigations of past agency acts are not exempt from disclosure even if used by policy decision-makers. *McClelland v. Andrus*, 606 F.2d 1278, 1288–89 (D.C.Cir.1979). Assertions that documents were designed to provide summaries to decision-makers of the factual or legal status of the project are insufficient bases for an assertion of privilege.

■ Finally, the fact that a document contains some deliberative material which should be protected does not mean that the document is entirely exempt from disclosure. Compiled factual material or purely factual material contained in deliberative memoranda and severable from its context must be disclosed, unless such factual material is so intertwined with the policymaking process that its disclosure would be inconsistent with the purposes of the privilege. *EPA v. Mink*, 410 U.S. 73, 87–92, 93 S.Ct. 827, 836–38, 35 L.Ed.2d 119 (1973). This concept of segregability requires that the government, in seeking to prevent disclosure, describe, where relevant, what proportion of a document is non-exempt, and how the non-exempt information is dispersed through the document. *Mead Data Central, Inc. v. U.S. Dept. of the Air Force*, 566 F.2d 242, 261 (D.C.Cir.1977). Since the summaries provided by HUD in the present case do

not indicate which information is predecisional and which merely describes past decisions, and since the summaries make no attempt to separate discoverable factual material from protected deliberative material, they are clearly inadequate in light of the cases set forth above.

■ For all of the above reasons, the Court has rejected HUD's assertions of the deliberative process privilege. The Court will order the immediate production of those documents concerning which HUD has asserted this privilege as the sole reason for its refusal to produce (Numbers 3, 0011115, 62, 10704, 10801), and A & R will be permitted to depose John Knapp, Alfred Marcks and Thomas Maloney concerning these documents.

■ The requirement of specificity in the claim of privilege applies with equal force to HUD's claims of work-product protection. The work-product privilege does not apply to all material that happens to have been prepared by an attorney. The material to be protected must have been prepared in anticipation of litigation. Of course, the anticipated litigation need not actually exist at the time of preparation, and preparatory work or work designed to preclude anticipated litigation may be protected. However, the privilege is not applicable unless some specific litigation is fairly foreseeable at the time the work product is prepared. As one Court has stated the test: "at the very least some articulable claim, likely to lead to litigation, must have arisen." *Coastal States Gas Corp. v. DOE,* 617 F.2d at 865.

■ The abstract possibility that an event might be the subject of future litigation will not support a claim of privilege; rather, the document must have been prepared "with a specific claim supported by concrete facts which would likely lead to litigation in mind." *Id; See Miles v. Bell Helicopter Co.,* 385 F.Supp. 1029, 1032–33 (N.D.Ga.1974).

In addition, as this Court stated recently in *In re Grand Jury Investigation,* 557 F.Supp. at 1057, material prepared in one

action does not gain protection in a subsequent proceeding unless there is a temporal and subject matter relationship between the two proceedings. Under this test, HUD is required not only to show that the work product for which it seeks protection was prepared in anticipation of litigation, but also that the litigation for which it was prepared bears a temporal and subject matter relationship to the current litigation.

■ Severability of factual from privileged material is important in the work-product privilege context as well. The privilege provides only a relatively slight degree of protection for relevant facts contained within otherwise privileged material. *In re Murphy,* 560 F.2d 326, 337 (8th Cir. 1977); *In re Grand Jury Investigation,* 557 F.Supp. at 1057. A showing of relevance and necessity is sufficient to overcome a claim of privilege as to such facts. *Id.* Fed.R.Civ.P. 26(b)(3). HUD must therefore review its claims of work-product privilege to insure that it is not withholding any relevant facts contained within assertedly privileged material and is protecting only "mental impressions, conclusions, opinions or legal theories" of its attorneys contained in material prepared in anticipation of litigation. As mentioned previously, the work-product privilege is not absolute, and even if the privilege applies, disclosure may be appropriate in light of the relevance of the material, the nonavailability of other evidence, the seriousness of the litigation and the issues involved, and the role of the government in the litigation.

■ HUD's submissions, though not sufficient to support its claim to work-product privilege with respect to the documents at issue, do show that some of the documents may be subject to a properly asserted work-product privilege. The Court will therefore order HUD to produce on or before June 3, 1983 the documents as to which it has claimed the work-product privilege, except that HUD may delete portions of those documents provided that HUD's attorneys file, on or before June 3, 1983, an affidavit averring:

(1) that the material sought to be protected was prepared in anticipation of the specific claims in this litigation, or claims likely to arise bearing a temporal and subject matter relationship to the claims in this litigation, such averment setting forth the purpose for which the document was prepared and the claim or probable claim in anticipation of which it was prepared;

(2) that the material sought to be protected contains the "mental impressions, conclusions, opinions, [or] legal theories" of HUD's attorneys or representatives; and

(3) that the material sought to be protected contains no factual material severable from such "opinion work-product".

An appropriate order follows.

### ORDER

AND NOW, this 20th day of May, 1983, upon consideration of the motion of plaintiff-intervenor A & R Development Corp./The Waterford Group, Inc. (A & R) to compel production of documents, and the response of defendant Department of Housing and Urban Development (HUD) thereto, and upon consideration of the motions of A & R to compel the deposition testimony of John Knapp, Alfred Marcks and Thomas Maloney, for the reasons stated in this Court's Memorandum of May 20th, 1983,

IT IS HEREBY ORDERED that the motions of A & R to compel production of documents and deposition testimony by defendant HUD are GRANTED in part. HUD shall produce the following five documents: Numbers 3, 0011115, 62, 10704, and 10801 and A & R may depose John Knapp, Alfred Marcks and Thomas Maloney concerning these documents and other matters as to which HUD has asserted a deliberative process privilege. HUD shall produce the remainder of the documents sought in the motion on or before June 3, 1983, except that HUD may delete portions of these documents provided that HUD shall file, on or before June 3, 1983, an affidavit concerning any such deleted portions setting forth that:

(1) the material sought to be protected was prepared in anticipation of the specific claims in this litigation, or claims likely to arise bearing a temporal and subject matter relationship to the claims in this litigation, said averment to set forth the purpose for which the document was prepared and the claim or probable claim in anticipation of which it was prepared;

(2) the material sought to be protected contains the mental impressions, conclusions, opinions or legal theories of HUD's attorneys or representatives concerning this litigation; and

(3) the material sought to be protected contains no factual material severable from such opinion work-product.