Roger A. PIES

v.

**UNITED STATES INTERNAL REVENUE SERVICE, et al., Appellants.**

**No. 79–2303.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Jan. 15, 1981.

Decided Nov. 6, 1981.

Stephen J. Gray, Atty., Dept. of Justice, Washington, D. C., with whom M. Carr Ferguson, Asst. Atty. Gen., Carl S. Rauh, U. S. Atty., at the time the brief was filed, and Richard W. Perkins, Atty., Dept. of Justice, Washington, D. C., were on the brief for appellant.

Ernest J. Brown, Atty., Dept. of Justice, Washington, D. C., also entered an appearance for appellant.

Bradley S. Waterman, Washington, D. C., for appellee.

Before ROBB and EDWARDS, Circuit Judges, and PENN,* District Judge, United States District Court for the District of Columbia.

Opinion for the court filed by District Judge PENN.

PENN, District Judge:

The Internal Revenue Service (IRS), in this case filed pursuant to the Freedom of Information Act (FOIA), 5 U.S.C. § 552, appeals from a decision of the District Court granting summary judgment to the appellee and requiring the IRS to release copies of draft proposed regulations (hereinafter referred to as the proposed regulations) purporting to interpret the now repealed Section 48(h) of the Internal Revenue Code of 1954 (26 U.S.C. § 48(h)).[1] IRS contends that the documents are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5).

## I

The underlying facts are not in dispute. During 1967, the IRS undertook to draft proposed regulations interpreting the now repealed Section 48(h) dealing with the temporary suspension of investment credit and certain related rules pertaining to the accelerated depreciation of affected investment credit property. Joint Appendix (JA) at 26–27, 52. Primary responsibility for preparing the proposed regulations was assigned to Robert A. Bley who during that time served as attorney-advisor, Assistant Branch Chief and then Branch Chief in the Legislation and Regulations Division, Office of the Chief Counsel, IRS. Mr. Bley authored a four-page draft transmittal memorandum, which summarized the substance and history of the proposed regulations, and a 146-page draft of proposed regulations. JA at 26–27. These drafts were prelimi-

nary and never received final approval even within the Legislation and Regulations Division. Nor were the drafts reviewed or approved by the Assistant Secretary of the Treasury for Tax Policy, who is the official charged with the responsibility for rejecting or accepting such proposed regulations.

The transmittal memorandum and the proposed regulations were transmitted by Bley's supervisor, together with a draft notice of proposed rulemaking to the tax legislative counsel of the Department of Treasury for his comments. JA at 28, 52. The documents were returned by the tax legislative counsel with the suggestion that they be revised to reflect the repeal of the investment credit in parts of another section of the Internal Revenue Code. Separate regulations reflecting the repeal of the investment credit provision of the Code were developed and later published as TD 7126, 1971–2 Cum.Bull. 66. The bulk of the drafts concerning Section 48(h) did not appear as a part of TD 7126 since the draft regulations dealt with the then repealed investment credit provisions of the Code. There was no further revision or review of the proposed regulations for Section 48(h) since the project was closed in December 1971, JA at 28, 52, but copies of the unpublished draft regulations were retained in IRS files where they have no official sanction as IRS interpretation or statement of policy, JA at 37–38.

Appellee Pies was employed as an attorney in the Legislation and Regulations Division during part of the period that is relevant here, i.e., 1967 through 1971, and in that capacity had access to nonpublic files including the draft proposed regulations that are the subject of the instant request. JA at 48. In his capacity as attorney in the division he participated in the drafting, consideration and promulgation of proposed and final Treasury Regulations issued by the IRS relating to Section 167(j) of the Internal Revenue Code. When preparing proposed regulations relating to Section 167(j), he examined and relied upon the

---

* Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976).

1. Repealed by Section 312(c)(1) of Public Law 95–600, November 6, 1978.

documents that are the subject of the present FOIA request. JA at 48. The regulations relating to Section 167(j) were issued in the form of a Notice of Proposed Rulemaking dated January 5, 1971, and as a Treasury Decision on March 10, 1972. *Id.* Pies stated in his affidavit filed in support of his motion that "[t]he provisions of § 1.167(j)–4 of the Treasury Regulations . . . adopt significant portions of the Proposed Regulations [drafted in reference to Section 48(h)] without material change". JA at 49. Moreover, he noted that "the provisions of the Proposed Regulations, except as incorporated in the portion of the Treasury Regulations relating to Section 167(j) . . . have not been made public." *Id.*

The District Court found that "the facts show that the § 48(h) draft regulations and the accompanying draft technical memorandum have been treated as a final work product by the IRS". JA at 54. The court also noted that the IRS did not demonstrate that the Section 48(h) drafts "have not been or will not be used and relied upon in connection with issuance of private letter rulings and other determinations" and that the "drafts are not subject to continued modification or discussion". JA at 55. Thus, the District Court, concluding that the drafts are not predecisional and that the IRS had at least informally adopted them, ordered the IRS to provide copies of the draft regulations and transmittal memoranda to Pies. JA at 55–56.

## II

■ The agency contends that the documents are exempt from disclosure pursuant to 5 U.S.C. § 552(b)(5) (Exemption 5) which provides that agencies are not required to make available

> inter-agency or intra-agency memoranda or letters which would not be available by law to a party other than an agency in litigation with the agency.

Documents protected from disclosure are those which fall within three categories, the attorney-client privilege, *Mead Data Central, Inc. v. U. S. Department of the Air Force,* 566 F.2d 242, 252–255 (D.C.Cir.1977); the attorney-work product privilege, *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 154,

95 S.Ct. 1504, 1518, 44 L.Ed.2d 29 (1975), *Bristol-Myers Co. v. FTC,* 598 F.2d 18 (D.C. Cir.1978), and the so-called executive, governmental or deliberative process privilege, *EPA v. Mink,* 410 U.S. 73, 85–90, 93 S.Ct. 827, 835–37, 35 L.Ed.2d 119 (1973). Those privileges have been compared and distinguished in *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854 (D.C.Cir. 1980). Here, the only privilege asserted by the appellant and considered by the District Court is the deliberative process privilege.

Recently, we had occasion to consider that privilege as it relates to General Counsel Memoranda (GCMs), Actions on Decisions (AODs) and Technical Memoranda (TMs) prepared and maintained by the appellant. *Taxation With Representation Fund v. IRS,* 646 F.2d 666 (D.C.Cir.1981). We affirmed so much of the District Court's Order that directed the release of GCMs that had been revised to reflect the final position of the Assistant Commissioner (Technical) and had been widely distributed throughout the agency, TMs that comprised a part of the "legislative history" of decisions and regulations that had been approved by the Treasury and AODs that recommended "no appeal", including cases of acquiescence or nonacquiescence and approved by the Assistant Commissioner (Technical). *Id.* at 681. In doing so, we noted the distinction between the above documents and GCMs that had never been distributed, TMs pertaining to proposed Treasury decisions and regulations that had never been approved and AODs recommending appeals in pending cases. We noted that "the documents subject to disclosure here include materials that reflect the 'working law' of the agency, in the form of final opinions, instructions or advice to staff, interpretative reports (explaining decisions or regulations) and the like." *Id.* at 681–82.

In *NLRB v. Sears, Roebuck & Co., supra,* the Supreme Court noted that

> [T]he public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted. These reasons, if expressed within the agency, constitute the 'working law' of the agen-

cy and have been held by the lower courts to be outside the protection of Exemption 5 . . . .

This conclusion is powerfully supported by the other provisions of the Act. The affirmative portion of the Act, expressly requiring indexing of· 'final opinions,' 'statements of policy and interpretations which have been adopted by the agency,' and 'instructions to staff that affect a member of the public,' 5 U.S.C. § 552(a)(2), represents a strong congressional aversion to 'secret [agency] law' . . . and represents an affirmative congressional purpose to require disclosure of documents which have 'the force and effect of law,' . . . We should be reluctant, therefore, to construe Exemption 5 to apply to the documents described in 5 U.S.C. § 552(a)(2); and with respect at least to 'final opinions,' which not only invariably explain agency action already taken or an agency decision already made, but also constitute 'final dispositions' of matters by an agency, . . . we hold that Exemption 5 can never apply.

421 U.S. at 152–54, 95 S.Ct. at 1517–18 (citations and footnote omitted).

■ Thus, documents that are not privileged and thereby do not fall within the protection of Exemption 5 are those that reflect the working law of the agency in the form of final opinions, statements of policies and interpretations to staff affecting a member of the public or statements which can be said to constitute the legislative history of the regulations. Documents that remain predecisional and are protected under Exemption 5 are those that do not reflect agency policy or interpretations of the agency and which obviously would be of little or no assistance to members of the public. Such documents, if released, may actually mislead the public as to the policy of the agency. There is no real public interest in such documents save perhaps for satisfying public curiosity. They are not informational and do not constitute agency "secret law".

■ Turning to the documents here, we note that they are draft proposed regulations and a draft transmittal memorandum

relating to Section 48(h). They were never subjected to final review, never approved by the officials having authority to do so, and never approved within the Legislation and Regulations Division. After their initial review they were returned for revision but were never revised and Section 48(h) was subsequently repealed. Therefore, it cannot be said that the documents reflect a final decision or policy of the agency; indeed they do not even address the issue of the repeal of Section 48(h).

■ Appellee contends that as an attorney at IRS during the relevant period, he reviewed the subject documents and "adopt[ed] significant portions of the proposed regulations without material change". JA at 49. Appellee's review and use of the documents in this context did not transform them into post-decisional documents or predecisional documents subject to release since it seems obvious that he used them only as a point of reference and not as reflecting agency law. The documents as reviewed by appellee were predecisional reflecting the agency "give and take" but, never having been approved, did not constitute the working law of IRS. As the Supreme Court noted, there is little public interest in the disclosure of " 'reasons supporting a policy which an agency has rejected, or . . . reasons which might have supplied, but did not supply, the basis for a policy which was actually adopted on a different ground' ". *Sears*, 421 U.S. at 152, 95 S.Ct. at 1517.

Except for those portions of the Section 48(h) proposed regulation said to have been incorporated in the regulations in support of Section 167(j), the proposed regulations have never been finalized. Anyone who wishes to review the background and regulations relating to Section 167(j) prepared by appellee, would have access to those portions of the proposed regulations that were adopted, incorporated or finalized as the law relating to Section 167(j). *Taxation With Representation Fund v. IRS, supra.*

A decision holding otherwise would be to rule that all similar documents and memoranda that are used as research tools by

**1354**

attorneys in the agency, even though never finalized nor approved to reflect agency policy, would be subject to release to the public. This was not the intention of Congress, such documents being predecisional and protected under Exemption 5.

We hold then that the draft proposed regulations relating to Section 48(h) and the draft transmittal memorandum relating to the same section are predecisional documents, which do not reflect the final opinion, interpretation or guidance of the agency, and therefore are exempt under Exemption 5. Having so held, the decision of the District Court 484 F.Supp. 930 ordering their release is now reversed.

*So Ordered.*